**WO**                                                                                                                       SVK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramona Sullins, | No. CV 06-3105-PHX-SMM (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

Plaintiff Ramona Sullins, who was formerly in the custody of the Arizona Department of Corrections (ADC), filed this *pro se* civil rights action against various officials of the Arizona Department of Corrections (ADC). The Court dismissed Defendants Schriro and Lang and Counts II and III of the First Amended Complaint and ordered Defendant DeVerna to answer Count I. (Doc. #6.) Defendant moves for summary judgment.[1] (Doc. #23.) The motion is fully briefed. (Doc. ##26, 27.)

The Court will grant the motion and terminate the action.

**I.     Background and Summary of Motion**

On March 4, 2004, Plaintiff was sentenced in Maricopa County Superior Court to two years' imprisonment for possession of narcotics and to nine months for possession of drug paraphernalia. (Doc. #5.) She was remanded to the custody of ADC. On May 3, 2004, the

---

[1] The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*). (Doc. #25.)

1  Superior Court of Maricopa County vacated the judgment and sentence in her case and
2  ordered her release from ADC as to both cases. (Id.) Plaintiff was not, however, released
3  until July 22, 2005. (Id.) In Count I of her First Amended Complaint, Plaintiff alleged that
4  her Eighth and Fourteenth Amendment rights were violated when she was held 538 days past
5  her release date.[2]

6  Defendant moves for summary judgment on the grounds that (1) Plaintiff cannot
7  demonstrate Defendant's affirmative involvement in any wrongdoing; (2) Plaintiff has not
8  shown a physical injury as required by 42 U.S.C. § 1997e(e); (3) Defendant is entitled to
9  Eleventh Amendment immunity as to claims in his official capacity; and (4) Defendant is
10 entitled to qualified immunity. (Doc. #23.)

11 **II.    Legal Standards**

12      **A.    Summary Judgment**

13 A court must grant summary judgment if the pleadings and supporting documents,
14 viewed in the light most favorable to the non-moving party, "show that there is no genuine
15 issue as to any material fact and that the movant is entitled to judgment as a matter of law."
16 Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under
17 summary judgment practice, the moving party bears the initial responsibility of presenting
18 the basis for its motion and identifying those portions of the record, together with affidavits,
19 which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477
20 U.S. at 323.

21 If the moving party meets its initial responsibility, the burden then shifts to the
22 opposing party who must demonstrate the existence of a factual dispute and that the fact in
23 contention is material, i.e., a fact that might affect the outcome of the suit under the

---

[2]Although Plaintiff also raised a Thirteenth Amendment claim in Count I, Plaintiff was previously advised that claims challenging detention past her release date were properly brought under either the Eighth or Fourteenth Amendments, not the Thirteenth Amendment. (Doc. #3.) The Court will dismiss those claims now as it is apparent from the March 14, 2007 Order that the Court intended to dismiss so much of Count I as raised Thirteenth Amendment claims. (Doc. #6.)

1 governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the
2 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
3 the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216,
4 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts
5 showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own
6 pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
7 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact
8 conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require
9 a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank
10 of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates
11 the entry of summary judgment against a party who, after adequate time for discovery, fails
12 to make a showing sufficient to establish the existence of an element essential to that party's
13 case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-
14 23.

15 When considering a summary judgment motion, the court examines the pleadings,
16 depositions, answers to interrogatories, and admissions on file, together with the affidavits,
17 if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the
18 evidence and determine the truth but to determine whether there is a genuine issue for trial.
19 Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all
20 justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the
21 non-moving party is merely colorable or is not significantly probative, summary judgment
22 may be granted. Id. at 249-50.

23 **B.     Detention Claim**

24 Detaining an inmate beyond the termination of his or her sentence could constitute a
25 violation of the Eighth Amendment's prohibition on cruel and unusual punishment if the
26 additional detention is the result of deliberate indifference to the inmate's liberty interest.
27 Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985) (*en banc*) (citing Estelle v.
28

Gamble, 429 U.S. 97, 104-06 (1976)).  "[O]therwise such detention can be held unconstitutional only if it violates due process."  Haygood, 769 F.2d at 1354.

In Haygood, the plaintiff disputed the methodology used to compute his release date—specifically, he claimed that two sentences should be served concurrently, not consecutively.  The jury found in favor of the plaintiff on his Eighth Amendment claim against two records officers, and the Ninth Circuit affirmed; the district court had noted that "plaintiff presented credible evidence that the defendants, after being put on notice, simply refused to investigate a computational error."  Id. at 1355.

As to the due process claim, the Ninth Circuit held that the loss of liberty was a major deprivation and that due process required the state to provide Haygood a meaningful hearing at a meaningful time.  Id. at 1356.  The court reasoned that the next step was to decide whether the hearing should have been provided at an earlier date than the hearing Haygood received in response to his habeas corpus petition.  Id.  The court noted that random, unauthorized deprivations cannot be prevented by due process hearings.  Id. at 1357 (citing Parratt v. Taylor, 451 U.S. 527 (1981)).  But where the injury is the result of the operation of state law, regulation, or institutionalized practice, it is not random or unauthorized, and in such cases, the state may not take away a protected interest without a hearing in advance of the injury.  Id. (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)).

> If the wrongful taking of liberty results from either affirmatively enacted or de facto policies, practices or customs, the court must determine when the responsible state officers received notice of a claim that a wrong was being done.  When an official with the authority to rectify an erroneous practice receives notice of the wrongful practice and its harmful consequences, due process requires the state to provide a hearing before a further denial of liberty can be said to be free from § 1983 liability.

Haygood, 769 F.2d at 1359.

Finally, to prevail on any claim under § 1983, a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

**III.   Motion for Summary Judgment**

    **A.   Parties' Contentions**

In support of his motion, Defendant submits his declaration (Doc. #24, Ex. 1, DeVerna Decl.); Department Order (DO) 1001, Inmate Release System (id., Attach.1); DO 1002 Inmate Release Eligibility System (id., Attach. 2); the ADC Release Packet for Plaintiff (id., Attach. 3); the declaration of Cynthia Aydlett, Quality Assurance Administrator for Offender Services (id., Ex. 2, Aydlett Decl. ¶ 1); correspondence and minute entry order in CR2004-6372 and CR2003-14086 (id., Attach. 1); and minute entry order CR2005-1239730991 (id., Attach. 2).

Defendant asserts that he is a Correctional Officer III at Arizona State Prison Complex-Perryville and that Plaintiff was assigned to his supervision. (DeVerna Decl. ¶¶ 5-6.) He asserts that DO 1001 sets out the procedures by which inmates committed to ADC are released and that it ensures proper notification. (Id. ¶ 7.) The Time Computation Unit (TCU) calculates eligibility dates for administrative release. (Aydlett Decl. ¶ 1.) Defendant attests that it is his practice to each month print out a listing of all inmates assigned to his supervision and to review what TCU lists as each inmate's release date. (DeVerna Decl. ¶¶ 7-8.) If a particular inmate is within release-packet time frames according to TCU, Defendant requests that the inmate provide an address for parole purposes and complete a release packet. (Id. ¶ 8.) Defendant does not himself determine eligibility for release; he relies on the information provided by TCU through the Automated Inmate System (AIMS).[3] (Id. ¶ 10.) Defendant attests that according to AIMS, TCU calculated Plaintiff's release date to be July 22, 2005; Defendant completed a release packet for that date. (Id. ¶ 12.) Plaintiff was released on July 22, 2005 and placed on parole. (Id. ¶¶ 11-12.)

Plaintiff's parole (community supervision) end date was January 20, 2006. (Aydlett Decl. ¶ 3.) Plaintiff was rearrested on August 4, 2005 and an ADC hold was placed on her for violations of conditions of her supervised release. (Id. ¶ 4.) On November 2, 2005,

---

[3] According to DO 1001.01 § 1.1.3.1, it is the Adult Information Management System. (Doc. #24, Ex. 1, Attach. 1.)

1 Plaintiff's parole officer, Butcher, received a fax from Plaintiff's attorney regarding the May
2 3, 2004 ruling from Maricopa County Superior Court. (Id.)  Butcher sent a copy of the
3 minute entry order to Aydlett at TCU. (Id. ¶¶ 4-5.) Aydlett attests that until November 2,
4 2005, TCU had never received a copy of the minute entry. (Id.)

5 Plaintiff admitted in her Complaint that she did not know about the release order.
6 (Doc. #5 at 4.) Defendant asserts that he did not receive notification of a release date earlier
7 than that of July 22, 2005 and had no knowledge of and had never seen a copy of the May
8 4, 2003 ruling until he was served with this lawsuit. (DeVerna Decl. ¶¶ 14-16.)

9 Plaintiff asserts that the State's Motion to Vacate, dated May 3, 2004 was delivered
10 to the Central Court building and Kerstin LeMarie, at the County Legal Defender's office.
11 (Pl.'s Statement of Facts (PSOF) ¶¶ 1-2, Ex. NA.)  Both cases against Plaintiff were
12 dismissed and vacated and the minute entry notes that Plaintiff was to be released. (PSOF
13 ¶¶ 3-4, Ex. NC, ND.) Plaintiff asserts that she was not present during the hearing and she
14 had no knowledge of the release order. (PSOF ¶ 5.) She contends that the Clerk of Court
15 sent the letter to ADC on May 11, 2004. (PSOF ¶ 6, Ex. NE.) Plaintiff also asserts that she
16 was treated with Prozac and suffered guilt, anguish, and depression over her belief that she
17 had lost her children. (PSOF ¶¶ 7-9.) She asserts that ADC, among other agencies, is
18 notified once a ruling is made. (PSOF ¶ 13.)

19 Defendant responds to Plaintiff's statement of facts, admitting that ADC mailed a
20 form to the Maricopa County Clerk's Office on May 11, 2004 but denies any implication that
21 it shows notice of the Order vacating Plaintiff's sentences. (Doc. #28 at ¶ 6.) Defendant
22 notes that there is no release date on the notice. (Id.) He also objects to Plaintiff's assertions
23 that agencies are notified of rulings as lacking evidentiary support. (Id. ¶ 13.) He also argues
24 that the mailbox rule, which raises a rebuttable presumption that if a document has been
25 mailed then it has been received in the usual time, does not help Plaintiff. (Doc. #27 at 3-4.)
26 She provides no evidence that the May 3, 2004 Order was, in fact, mailed to ADC and no
27 evidence that Defendant, a correctional officer, would have seen it. (Id.)

28

### 2. Analysis

Defendant has met his burden to show that there is no genuine dispute of material fact regarding his liability, and Plaintiff has not demonstrated that a genuine dispute exists.

Although Plaintiff was held for more than a year beyond her release date, Defendant offers undisputed evidence that he did not calculate Plaintiff's release date—that was done by TCU—and he had no knowledge of the court order that vacated Plaintiff's convictions and sentences until Plaintiff brought this lawsuit. The Court notes that the May 3, 2004 Order, which orders Plaintiff's release from ADC, lists "AZ DOC" next to the caption, along with the State's attorney, defense counsel, Victim's Services, and others. (Doc. #23, Ex. 2, Attach. 1; Doc. #26, Ex. NC-ND.) But even if the Court finds that the Order was sent to ADC, there is no evidence that Defendant received it or otherwise knew of it. In fact, the evidence shows that ADC's Bureau of Offender Services TCU is responsible for calculating inmate release dates and that TCU did not receive the Order until November 2, 2005 when it was faxed from defense counsel to a Parole Supervisor and then to TCU. The undisputed evidence also shows that upon confirming the Order with the state court, TCU notified the parole officer to remove Plaintiff from supervision and to drop the ADC hold.

Moreover, Plaintiff does not assert that prior to her July 2005 release she notified Defendant or anyone else in ADC regarding the order requiring her release; in fact, she contends that she did not know of the order until months after her actual release. Thus, under either an Eighth Amendment or due process theory, Plaintiff does not show that anyone at ADC was put on notice of the release date and refused to investigate it or had notice of a wrongful practice and refused to provide a hearing. See Haygood, 769 F.2d at 1355, 1359. With regard to the due process claim, there is no evidence that the extended custody was the result of a regulation or defacto policy or practice; the evidence shows that when ADC was notified of the order, it took steps to remove Plaintiff from supervision and drop the ADC hold. There is certainly no evidence to dispute Defendant's assertion that he was not aware of an earlier release date and, therefore, no evidence that his conduct resulted in the harm to Plaintiff. See Rizzo, 423 U.S. at 371-72, 377.

1     While the Court is not unsympathetic to Plaintiff, it must nevertheless grant summary judgment. Accordingly,

    **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. # 23) is **granted**, all claims in Count I are dismissed, and this action is terminated. The Clerk of Court must enter judgment accordingly.

    DATED this 27th day of May, 2008.

*[signature]*

Stephen M. McNamee
United States District Judge